IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | CASE NO. 20-33295 (DRJ) | |
| § | | |
| COVIA HOLDINGS CORPORATION, § | (Jointly Administered) | |
| ET AL.,[1] § | | |
| § | CHAPTER 11 | |
| § | | |
| Debtors. § | | |
| § | | |
| COVIA HOLDINGS CORPORATION, § | | |
| § | Adversary No. _____ | |
| Plaintiff, § | | |
| § | | |
| v. § | | |
| § | | |
| FTS INTERNATIONAL SERVICES, § | | |
| LLC, § | | |
| § | | |
| Defendant. § | | |

## COMPLAINT

Covia Holdings Corporation ("Covia" or the "Debtor"), plaintiff herein, for its *Complaint* against defendant FTS International Services, LLC ("FTSI" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory relief and damages against FTSI for FTSI's improper termination of its contract with Covia in violation of the automatic stay.

2. Covia and FTSI entered into that certain *Amended and Restated Supply Agreement* dated May 3, 2019 (the "Supply Agreement") whereby FTSI agreed to purchase minimum quantities of proppant from Covia for use in its operations over the six-year term of the Supply

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Covia. The location of Debtor Covia Holdings Corporation's principal place of business and the Debtors' service address is: 3 Summit Park Drive, Suite 700, Independence, Ohio 44131.

1

Agreement. The Supply Agreement also requires that FTSI pay Covia a settlement amount in exchange for a significant reduction in FTSI's prior purchase obligations as well as certain annual fees under the Supply Agreement.

3.   On July 14, 2020, FTSI purported to terminate the Supply Agreement on the grounds that the automatic stay did not prevent the termination of the Agreement, because it is allegedly a forward contract under section 556 of title 11 of the United States Code (the "Bankruptcy Code").

4.   FTSI purportedly terminated the Supply Agreement on this basis, without first seeking confirmation of its status from the Court, and told Covia that it would not pay the Restructuring Fee (hereinafter defined) upon termination, as required by the Supply Agreement, thereby depriving Covia's estate of at least $_____.

5.   Even after Covia contested FTSI's purported termination of the Supply Agreement and demonstrated the inapplicability of FTSI's purported defenses, FTSI continued to stand by the termination while refusing to make any required termination payments, including the Restructuring Fee and the Reservation Fee (hereinafter defined), thereby depriving Covia's estate of an additional $_____.

6.   FTSI has violated the automatic stay under the Bankruptcy Code, cherry picked the portions of the Supply Agreement it wishes to enforce (*i.e.*, attempted to enforce its ability to terminate without making the required termination payments) and, ultimately, has left Covia with no choice but to seek this Court's intervention to enforce FTSI's obligations under the Supply Agreement.

7.  Contrary to FTSI's assertions, the Supply Agreement is not subject to termination as a forward contract under the Bankruptcy Code, because FTSI is the end user of the proppant it purchases from Covia, and therefore is not a forward contract merchant.

8.  Accordingly, FTSI's purported termination of the Supply Agreement is void as a matter of law because the *ipso facto* clause it relied upon is unenforceable under section 365(e) of the Bankruptcy Code.

9.  Further, FTSI's purported termination is a material breach of the Supply Agreement and, therefore, following appropriate notice, Covia is permitted to terminate the Supply Agreement pursuant to Section 8.3(i) thereof. In that event, FTSI would owe Covia at least $▮, including the remaining Reservation Fee of $▮ and the remaining Restructuring Fee of $▮.

10. Alternatively, if the Supply Agreement were deemed to constitute a forward contract, with termination by FTSI permissible under the Supply Agreement, FTSI still owes Covia at least the remaining Restructuring Fee of $▮.

11. Section 8.4 of the Supply Agreement requires that the termination payments be made by FTSI to Covia within thirty (30) days of termination. Despite the lapse of more than thirty (30) days from FTSI's purported termination of the Supply Agreement, FTSI has not made any termination payments.

12. Covia seeks a declaratory judgment that: (1) the Supply Agreement is not a forward contract subject to termination under section 556 of the Bankruptcy Code because FTSI is not a forward contract merchant; (2) the automatic stay under section 362(a)(3) of the Bankruptcy Code applies to the Supply Agreement; (3) FTSI may not terminate the Supply Agreement pursuant to an *ipso facto* clause; (4) FTSI's wrongful termination constitutes a material breach of the Supply

Agreement, thereby entitling Covia to terminate the Supply Agreement pursuant to its Section 8.3(i); and (5) FTSI's purported termination of the Supply Agreement violated sections 362(a)(3) and 365(e) of the Bankruptcy Code.

13. In the alternative, if the Court determines that FTSI is not a forward contract merchant under the Supply Agreement, then FTSI's threatened termination is for a reason other than that listed in Section 8.3 of the Supply Agreement and Covia seeks damages in the amount of $ ▇▇▇▇▇▇ for the termination payments owed under Section 8.4(b) of the Supply Agreement.

14. If the Court finds that FTSI properly terminated the Supply Agreement as a forward contract, then Covia seeks payment of at least the Restructuring Fee of $ ▇▇▇▇▇▇ as required by Section 8.4(c) of the Supply Agreement.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

16. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This adversary proceeding presents a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A).

## PARTIES

17. Defendant FTSI is a Texas corporation that may be served with a copy of this complaint and summons through its counsel, Winton & Strawn LLP, 2121 N. Pearl Street, Suite 900, Dallas, Texas 75201. Its principal place of business is located at 777 Main Street, Suite 2900, Fort Worth, Texas 76102.

18. Plaintiff Covia is a corporation organized under Delaware law and is a debtor in possession in the above-captioned chapter 11 cases.

## FACTUAL BACKGROUND

a. **The Parties' Businesses**

19. Covia is a leading provider of diversified mineral solutions to the oil and gas, glass, ceramics, coatings, metals, foundry, polymers, construction, water filtration, sports and recreation markets. Among its solutions, Covia sells raw frac sand and other value-added proppants to support hydraulic fracturing operations.

20. Covia filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 29, 2020 (the "Petition Date").

21. FTSI purchases proppant from Covia and other suppliers to use in its hydraulic fracturing services. FTSI uses the proppant to stimulate hydrocarbon flow from oil and natural gas wells drilled by exploration and production companies.

22. When FTSI engages in hydraulic fracturing, it uses the proppant purchased from Covia as a wedge to keep the fractures open, enabling the hydrocarbons to flow freely. If the fracturing process is successful, then the hydrocarbon recovery rates are enhanced to the benefit of FTSI's customers.

23. Upon information and belief, FTSI only resells proppant when it is unable to use the proppant it has purchased or that it is obligated to purchase under the Supply Agreement. Upon information and belief, FTSI is not selling sand for a profit, but rather in an effort to mitigate its liabilities.

b. **The Original Supply Agreement**

24. In 2013, FTSI and Covia's predecessor corporation, Fairmount Minerals, Ltd., entered into an Asset Purchase Agreement whereby Fairmount Minerals acquired FTSI's proppant business, including certain sand mining plants, resin-coating plants, and distribution terminals,

5

among other things. One of the key aspects of the Asset Purchase Agreement was a supply agreement between FTSI and an affiliate of Covia's predecessor corporation, Technisand, Inc., whereby FTSI agreed to purchase a minimum amount of proppant from Covia (the "Original Supply Agreement").

25. However, during the term of the Original Supply Agreement, FTSI was unable to comply with the minimum purchase requirements, eventually owing Covia over $█████████.

26. In an effort to resolve FTSI's failure to pay under the Original Supply Agreement, the Parties agreed to settle FTSI's debt by restructuring the Original Supply Agreement and executing the current Supply Agreement in 2019.

27. Upon information and belief, FTSI is planning to commence a chapter 11 bankruptcy case.[2] Because the Supply Agreement is an executory contract integrated into the larger sale transaction and specifically the Asset Purchase Agreement, FTSI may not reject the Supply Agreement in a future bankruptcy.

   c. **The Supply Agreement**

28. In the Supply Agreement, the Parties renegotiated both the pricing and the minimum purchase obligations. *See* Supply Agreement, attached hereto as Exhibit 1.[3]

29. The Parties also agreed to certain liquidated damages in the event that FTSI was unable to meet its minimum purchase obligations, a settlement payment in exchange for a significant reduction in FTSI's purchase obligation, certain periods where the price could be

---

[2] *See* FTS International, Inc. Form 8-K, August 24, 2020 at Exhibit 10.1.

[3] The Supply Agreement is attached hereto in redacted form; Covia is seeking leave to file the unredacted version under seal.

renegotiated, and other fees as part of the renegotiation of the Supply Agreement. These fees are described below.

      *i.*    *The Reservation Fee*

30. As part of the price negotiations, FTSI and Covia agreed that during each year of the Supply Agreement, FTSI would pay Covia $_____ (the "Reservation Fee"). If certain conditions were met, Covia would credit the Reservation Fee against proppant purchases made by FTSI. The Reservation Fee was enticement for Covia to maintain production sufficient to fulfill FTSI's obligation to purchase _____ tons of proppant annually and served as liquidated damages in the event that FTSI failed to fulfill such minimum purchase obligation. Exhibit 1, § 2.3(a) and § 2.3(c).

      *ii.*    *The Restructuring Fee*

31. In addition, as part of the settlement and release of FTSI's obligations under the Original Supply Agreement, FTSI and Covia agreed that FTSI would pay Covia a $_____ Restructuring Fee in six equal installments of $_____ throughout the six years of the Supply Agreement. *See id.* § 2.3(b).

32. Section 2.3(b) makes clear that the Restructuring Fee is in consideration for the release of FTSI's obligations under the Original Supply Agreement, "[a]s partial consideration for Supplier entering into this Agreement and as consideration for Supplier's release of FTSI from certain of its obligations under the [Original] Supply Agreement pursuant to Section 10.12 and for Supplier resolving certain outstanding matters under the [Original] Supply Agreement, FTSI agrees to pay Supplier an aggregate amount of $_____ ('Restructuring Fee')."

33. Both FTSI and Covia agreed upon the Restructuring Fee amount in exchange for the settlement and release of any claims under the Original Supply Agreement.

7

34. Section 10.12 of the Supply Agreement entitled "Release," provides that each party releases the other from any causes of action arising under the Original Supply Agreement. Effectively, the Restructuring Fee served as the settlement of FTSI's approximately $▆▆▆▆ liability for future purchases under the Original Supply Agreement.

### iii. Termination Provisions

35. Section 8.3 provides for certain events that permit termination of the Supply Agreement. These permissible termination events include but are not limited to, a material breach of the Supply Agreement or the filing of a voluntary petition for bankruptcy.

36. Under Section 8.3(i), either party may terminate the Supply Agreement if the other party is in material default or material breach that remains unremedied for 30 days after notice thereof.

37. Under Section 8.4(c) of the Supply Agreement, if FTSI terminates for any of the reasons enumerated in Section 8.3, then it owes the Restructuring Fee pursuant to Section 8.4(b)(iii). FTSI must pay the remaining amounts owed under the Restructuring Fee within 30 days after termination of the Supply Agreement.

38. The Supply Agreement also dictates the payments owed in the event that Covia terminates the Supply Agreement where FTSI has materially breached the Agreement. *See* Exhibit 1, § 8.4(b). If Covia terminates under Section 8.3(i), then pursuant to Section 8.4(b) FTSI must pay Covia the remaining amounts owed for the Restructuring and Reservation Fees.[4] This payment also becomes due within 30 days of termination. *See* Section 8.4(b).

---

[4] There are other payments listed in Section 8.4(b); however, these payments are not at issue for purposes of this dispute.

39. In Section 8.4(g), Covia and FTSI agreed that the Reservation Fee is a permissible liquidated damages amount as it is "reasonable as a forecast of anticipated or actual harm which would be caused by FTSI's breach of its purchase obligations under this Agreement and has been negotiated between the Parties . . ."

### d. Covia's Voluntary Chapter 11 Petition for Bankruptcy

40. Covia commenced its chapter 11 case on the Petition Date.

41. Upon commencement of Covia's chapter 11 case, the automatic stay pursuant to section 362(a)(3) of the Bankruptcy Code and the prohibition on *ipso facto* terminations in section 365(e) of the Bankruptcy Code prevented FTSI from terminating the Supply Agreement.

### e. FTSI's Planned Termination and Disclosure of the Supply Agreement

42. Despite the automatic stay, on July 14, 2020, FTSI sent Covia a letter purporting to terminate the Supply Agreement under section 556 of the Bankruptcy Code and Section 8.3(ii) of the Supply Agreement, citing Covia's June 29, 2020 bankruptcy petition as grounds for termination.

43. In that same letter, FTSI also took the position, without any reasonable explanation, that it does not owe Covia the accelerated Restructuring Fee, on the basis that it is an unenforceable penalty.

44. Covia contested FTSI's termination in a July 22, 2020 letter, where Covia noted that FTSI is not a forward contract merchant and thus, the automatic stay under section 362 of the Bankruptcy Code applies to prevent termination of the Supply Agreement.

45. As a threshold matter, the Supply Agreement is not eligible for safe harbor treatment, because FTSI is not a forward contract merchant.

46.     Upon information and belief, FTSI is the end-user of the proppant, using it in its hydraulic fracturing services.  Upon information and belief, FTSI may resell portions of the sand to mitigate its liabilities under the Supply Agreement if it cannot meet the minimum purchase requirements; but it is not a "merchant" and does not resell this sand for a profit.

47.     Because FTSI is not a forward contract merchant, the Supply Agreement is not subject to termination as a forward contract under the Bankruptcy Code.

48.     Accordingly, FTSI's threatened termination of the Supply Agreement is pursuant to Section 8.4(b) (for a reason other than Section 8.3), and FTSI owes Covia both the Restructuring and Reservation Fees, totaling $[redacted].

49.     Further, FTSI's purported termination of the Supply Agreement violates section 365(e) of the Bankruptcy Code, was taken without cause and constitutes a material breach of the Supply Agreement; whereby, Covia is permitted to terminate the Supply Agreement under Section 8.3.  Again, under such circumstances, FTSI owes Covia both the Restructuring and Reservation Fees, totaling $[redacted].

50.     Even if the Supply Agreement were terminable as a forward contract, and FTSI has properly terminated the Supply Agreement pursuant to Section 8.4(c), FTSI still owes Covia the $[redacted] Restructuring Fee as a settlement of FTSI's liability under the Original Supply Agreement.  The parties have already agreed that the Restructuring Fee amount is reasonable consideration in exchange for Covia's settlement and release of FTSI from amounts due under the Original Supply Agreement.

51.     If FTSI were permitted to terminate the Supply Agreement under either Section 8.4(b) or 8.4(c), then it has breached the Supply Agreement because it has not paid any termination payments within the 30-day requirement of Section 8.4.

## CLAIM FOR RELIEF

## COUNT I – DECLARATORY JUDGMENT UNDER SECTION 556 OF THE BANKRUPTCY CODE

52. Covia realleges and incorporates by reference as though fully set forth herein the allegations contained in each of the preceding paragraphs.

53. Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

54. Section 362(a)(3) of the Bankruptcy Code prohibits "all entities" from engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," which prohibits acts to terminate the debtor's executory contracts.

55. Section 556 of the Bankruptcy Code permits a non-debtor party to a forward contract, who is also a forward contract merchant, to terminate the contract even if the counterparty has filed for bankruptcy.

56. A forward contract is "a contract . . . for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into . . ." 11 U.S.C. § 101(25)(A).

57. A forward contract merchant "means a Federal reserve bank, or an entity the business of which consists in whole or in part of entering into forward contracts as or with

11

merchants in a commodity (as defined in section 761) or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade." *Id.* § 101(26).

58. A forward contract merchant is not the end user or producer of the product that is the subject of the contract. *See In re Mirant*, 310 B.R. 548, 567-68 (N.D. Tex. 2004) ("Taking the word 'merchant' first, a merchant is one that is not acting as either an end-user or a producer. Rather, a merchant is one that buys, sells or trades in a market . . . [T]he court concludes that a forward contract merchant is a person that, in order to profit, engages in the forward contract trade as a merchant or with other merchants.").

59. The Supply Agreement is not terminable under section 556 of the Bankruptcy Code because FTSI is not a forward contract merchant.

60. Similarly, while FTSI has claimed to be a forward contract merchant, it is in fact the end user of the proppant. FTSI uses the proppant it purchases from Covia in its hydraulic fracturing services. Upon information and belief, FTSI may resell portions of the sand it purchases from Covia to mitigate its liabilities under the Supply Agreement if it cannot meet the minimum purchase requirements; however, it is not a "merchant" and it does not resell this proppant for a profit. Thus, for purposes of this Supply Agreement, FTSI is not a forward contract merchant.

61. Because FTSI is not a forward contract merchant, FTSI may not terminate the Supply Agreement under section 556 of the Bankruptcy Code; instead, any such termination efforts are prohibited by sections 362(a)(3) and 365(e) of the Bankruptcy Code.

62. Accordingly, Covia requests that the Court enter a declaratory judgment that (a) the Supply Agreement cannot be terminated under section 556 of the Bankruptcy Code, because FTSI is not a forward contract merchant; (b) the automatic stay under section 362(a)(3) of the

Bankruptcy Code applies to the Supply Agreement; and (c) FTSI may not terminate the Supply Agreement pursuant to an *ipso facto* clause; or, in the alternative, (d) FTSI's purported termination of the Supply Agreement was (1) for a reason other than that set forth in Section 8.3 thereof, and/or (2) improper and, following notice, constitutes a material breach that entitles Covia to terminate the Supply Agreement pursuant to Section 8.3(i), and, in either event, Covia would therefore be entitled to the Reservation Fee and Restructuring Fee as set forth in Section 8.4(b) of the Supply Agreement.

## COUNT II – DECLARATORY JUDGEMENT FOR VIOLATION OF THE AUTOMATIC STAY

63. Covia realleges and incorporates by reference as though fully set forth herein the allegations contained in each of the preceding paragraphs.

64. FTSI's purported termination of the Supply Agreement constitutes an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" under section 362(a)(3) of the Bankruptcy Code.

65. The Supply Agreement is not a "forward contract" under section 101(25)(A) of the Bankruptcy Code because FTSI is not a "forward contract merchant" under section 101(26) of the Bankruptcy Code. Therefore, section 556 of the Bankruptcy Code is not applicable to FTSI's purported termination of the Supply Agreement and such purported termination therefore violated the automatic stay and the *ipso facto* rule under section 365(e) of the Bankruptcy Code.

66. Accordingly, Covia requests that the Court enter a declaratory judgment that FTSI was not entitled to terminate the Supply Agreement and FTSI's purported termination of the Supply Agreement violated sections 362(a)(3) and 365(e) of the Bankruptcy Code.

## COUNT III – ANTICIPATORY BREACH OF CONTRACT

67. Covia realleges and incorporates by reference as though fully set forth herein the allegations contained in each of the preceding paragraphs.

68. The Supply Agreement is a binding and enforceable contract.

69. Covia has met all of its obligations under the Supply Agreement.

70. FTSI purported to terminate the Supply Agreement pursuant to its July 14, 2020 letter.

71. Section 8.3 of the Supply Agreement provides for certain permissible causes of termination, including, among other reasons, a material breach of the Supply Agreement or the voluntary filing of a bankruptcy petition.

72. FTSI has purported to terminate the Supply Agreement on the basis of Covia's chapter 11 petition for bankruptcy.

73. Because FTSI is not a forward contract merchant, it is not permitted to terminate the Supply Agreement on that basis. Therefore, FTSI's threatened termination of the Supply Agreement is for a reason other than those listed in Section 8.3.

74. Section 8.4(b) provides that when the Supply Agreement is terminated for a reason other than that which is listed in Section 8.3, FTSI owes Covia the Restructuring Fee and the Reservation Fee, which presently total $███████.

75. Accordingly, based on FTSI's anticipatory breach of the Supply Agreement, it owes Covia, $███████ in the Restructuring Fee and Reservation Fee.

## COUNT IV – BREACH OF CONTRACT

76. Covia realleges and incorporates by reference as though fully set forth herein the allegations contained in each of the preceding paragraphs.

77. The Supply Agreement is a binding and enforceable contract.

78. Covia has met all of its obligations under the Supply Agreement.

79. In the alternative, if FTSI were permitted to terminate the Supply Agreement as a forward contract, then it has breached the Supply Agreement by failing to pay the Restructuring Fee within 30 days of termination of the Agreement.

80. Section 8.4(b)(iii) requires FTSI to pay the Restructuring Fee in the event of termination of the Supply Agreement pursuant to a termination event in Section 8.3.

81. FTSI stated in its July 14, 2020 termination letter that it will not pay the Restructuring Fee.

82. FTSI was required to pay this amount within 30 days of termination, which would have been August 13, 2020, but it has failed to do so.

83. Because FTSI has not paid the Restructuring Fee within 30 days, it has breached the Supply Agreement and owes Covia the remaining $███████.

## **RELIEF REQUESTED**

84. Covia requests that this Court enter a declaratory judgment that: (1) FTSI is not a forward contract merchant and, thus, the Supply Agreement is not a forward contract subject to termination under section 556 of the Bankruptcy Code; (2) the automatic stay under section 362(a)(3) of the Bankruptcy Code applies to the Supply Agreement; (3) FTSI may not terminate the Supply Agreement pursuant to an *ipso facto* clause; (4) FTSI's purported termination of the Supply Agreement violated the automatic stay under section 362(a)(3) of the Bankruptcy Code and the *ipso facto* rule under section 365(e) of the Bankruptcy Code; and (5) FTSI's purported termination of the Supply Agreement was improper and constitutes a material breach that entitles Covia to terminate the Supply Agreement pursuant to Section 8.3.

85. In the alternative, if the Court determines that FTSI is not a forward contract merchant, FTSI's threatened termination of the Supply Agreement falls under Section 8.4(b) and Covia requests that judgment should be entered in favor of Covia and against FTSI for FTSI's breach of the Supply Agreement for its failure to pay $_____ in Restructuring and Reservation Fees within 30 days after notice of such breach.

86. If FTSI is permitted to terminate the Supply Agreement as a forward contract, then Covia requests that judgment be entered in favor of Covia and against FTSI for FTSI's breach of the Supply Agreement and that Covia is awarded the remaining amount of the Restructuring Fee ($_____) under Section 8.4(c).

87. Covia also seeks attorneys' fees pursuant to Section 9.1(a) of the Supply Agreement, in addition to pre- and post-judgment interest.

88. Covia reserves the right to seek sanctions to the extent that this Court finds that FTSI has violated the automatic stay under section 362(a)(3) of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 10, 2020

By: */s/ Noah Schottenstein*

DLA Piper LLP (US)

Noah Schottenstein, State Bar No. 24100661
1900 North Pearl Street
Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Fax: (214) 743-4545
noah.schottenstein@us.dlapiper.com

Thomas R. Califano (admitted *pro hac vice*)
Rachel Ehrlich Albanese (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Fax: (212) 335-4501
thomas.califano@us.dlapiper.com
rachel.albanese@us.dlapiper.com

Brett Ingerman (admitted *pro hac vice*)
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: (410) 580-3000
Fax: (410) 580-4000
brett.ingerman@us.dlapiper.com

*Special Counsel for Plaintiff Covia Holdings Corporation*